

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

                             :

UNITED STATES OF AMERICA

                             :

        -v-                     :         11-CR-6021CJS

KARL KLEBER,

                             :

               Defendant.

                             :

## PLEA AGREEMENT

The defendant, KARL KLEBER, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I.   THE PLEA AND POSSIBLE SENTENCE

1.   The defendant agrees to plead guilty to Count Two of the Indictment, which charges a violation of Title 18, United States Code, Section 545 (smuggling goods into the United States) for which the maximum possible sentence is a term of imprisonment of twenty (20) years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of three (3) years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.   The defendant understands that, if it is determined that he has violated any of the terms or conditions of his supervised release, he may be required to serve in prison all or part of the term of supervised release, up to two (2) years, without credit for time previously served on supervised release.  As a consequence, in the event he is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in Paragraph 1 of this agreement.

## II.   ELEMENTS AND FACTUAL BASIS

3.   The defendant understands the nature of the offense set forth in Paragraph 1 of this agreement and understands that, if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime: that the defendant (1) fraudulently or knowingly, (2) imported or brought into the United States, (3) any merchandise, (4) contrary to law.

## FACTUAL BASIS

4.   The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

2

a.   From   sometime   prior   to   2007   and
continuing through 2008, the defendant was in
the business of locating, procuring, buying,
selling,   brokering   and   arranging   for
transactions   involving   arms,   parts   and
equipment for military, police and private
establishments individually and as a director
and principal of Transarms Handelsgesellschaft
mbH & Co KG ("Transarms"), a company based in
Germany.

b.   From   sometime   prior   to   2007   and
continuing   through   2008,   co-defendant   Gary
Hyde was in the same business as defendant,
individually and as the managing director of
York Guns Ltd. ("York Guns"), a company based
in Great Britain.

c.   From   sometime   prior   to   2007   and
continuing through 2008, the defendant and co-
defendant Gary Hyde also engaged in the arms
business together as directors and principals
of Jago Ltd. ("Jago"), a company based in
Great Britain that was co-located with York
Guns.

d.   From   sometime   prior   to   2007   and
continuing   through   2008,   co-defendant   Paul
Restorick   was   in   the   same   business   as
defendant,   individually   and   through   his
ownership and control of Mil Tec Marketing,
U.K. ("Mil Tec"), an unincorporated business
based in Great Britain.

e.   In   or   about   late   February   2007,   co-
defendant Paul Restorick communicated with
co-defendant Gary Hyde at Jago about obtaining
75 round capacity, AK-47 rifle drum magazines
and other items to satisfy an order from an
American customer ("customer") of Mil Tec that
was serving as a subcontractor in connection
with a United States Department of Defense
contract to supply military goods for delivery
and use in Iraq.   Co-defendant Gary Hyde
informed defendant of his communication with
co-defendant Paul Restorick.   As a result of
the communications from Restorick, defendant
and co-defendant Gary Hyde communicated with a

3

Chinese arms manufacturer about filling the order for the drum magazines.

f.     Between in or about late February 2007 and July 2007, defendant and co-defendant Gary Hyde communicated with the Chinese arms manufacturer about supplying the 75 round capacity, AK-47 rifle drum magazines for Jago without any Chinese markings on the magazines or the packaging.  Based on the request of co-defendant Paul Restorick, defendant and co-defendant Gary Hyde arranged with the Chinese arms manufacturer to have markings put on the 75 round capacity, AK-47 rifle drum magazines to make it appear that they were manufactured in Bulgaria.

g.     On or about August 21, 2007, based on communications with his co-defendants, defendant arranged a shipment on behalf of Jago from Transarms of 120 Chinese-manufactured, 75 round capacity, AK-47 rifle drum magazines to a representative in Romania of co-defendant Paul Restorick's customer.  On the shipping document from Transarms to the customer, defendant represented that the shipped items were of Bulgarian origin.

h.     In or about November 2007, Jago was shipped 1,000 75 round capacity, AK-47 rifle drum magazines by the Chinese arms manufacturer.

i.     Between in or about August 2007 and mid-February 2008, co-defendant Paul Restorick and Mil Tec did not satisfy the order for 75 round capacity, AK-47 rifle drum magazines from the customer and, in February 2008, litigation was commenced by the customer against co-defendant Paul Restorick and Mil Tec.

j.     In or about March 2008, Jago was shipped 5,000 75 round capacity, AK-47 rifle drum magazines by the Chinese arms manufacturer. By May 2008, Jago had shipped all of the Chinese-manufactured, 75 round capacity, AK-47 rifle drum magazines with Bulgarian markings to Transarms in Germany.

k.   Between January and March 2008, knowing that China was a prohibited source for defense articles to be imported into the United States, defendant offered to sell the Chinese-manufactured, 75 round capacity, AK-47 rifle drum magazines being held by Transarms to American Tactical Imports, Inc. ("ATI"), in Rochester, New York.   By March 18, 2008, defendant provided ATI with information to be used by ATI to submit to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") an ATF Form 6, Application and Permit for Importation of Firearms Ammunition and Implements of War, requesting permission to import 75 round capacity, AK-47 rifle drum magazines into the United States.

l.   On or about March 18, 2008, as a result of its communications with defendant, ATI completed an ATF Form 6, Application and Permit for Importation of Firearms Ammunition and Implements of War, seeking a permit to import 10,000 75 round capacity, AK-47 rifle drum magazines into the United States, which form represented that the manufacturer of the drum magazines was "NITI" in "Kasnalak/Bulgaria."   The application was approved by ATF, and the import permit issued, on April 10, 2008.

m.   Between May and June 2008, ATI provided End User Certificates to Transarms specifying shipment from Germany to the United States for the 75 round capacity, AK-47 rifle drum magazines and other items to be purchased from Transarms and Transarms requested permission from the German government to export the 75 round capacity, AK-47 rifle drum magazines to ATI in the United States.

n.   During August 2008, defendant communicated with co-defendant Paul Restorick about the sale of the Chinese-manufactured, 75 round capacity, AK-47 rifle drum magazines to ATI, about payment to co-defendant Restorick and about defendant providing a copy of the invoice for the sale to co-defendants Paul Restorick and Gary Hyde.

o. During the summer of 2008, in order to secure the release of the imported drum magazines from the custody of U.S. Department of Homeland Security, U.S. Customs and Border Protection ("CBP") agents, ATI presented an ATF Form 6A, Release and Receipt of Imported Firearms, Ammunition and Implements of War, listing 5,760 drum magazines described as "NITI, 762x39 75rd Drum Magazines Pre-Ban unmarked 1992-1993, Category I(b)" and listing the country where the magazines were manufactured as "Bulgaria."

p. During August 2008, defendant caused the shipment by Transarms of 5,760 Chinese-manufactured, 75 round capacity, AK-47 rifle drum magazines to ATI, invoicing the magazines at $60 each for a total value of $345,600. Defendant caused the Transarms bill of lading, dated August 20, 2008, to identify the items as "NITI AK47 Drum Magazines." The drum magazines arrived into the Port of New York on or about September 1, 2008.

q. On or about September 5, 2008, defendant communicated with a female representative of Jago concerning expenses incurred by Jago on the sale of the AK-47 rifle drum magazines to ATI and the profit to be shared from the sale.

r. During September 2008, the AK-47 rifle drum magazines were delivered to the business premises of ATI in Rochester, New York.

s. During October 2008, defendant communicated with co-defendant Gary Hyde about Jago documentation relating to the sale of the 5,760 Chinese-manufactured, 75 round capacity, AK-47 rifle drum magazines to ATI in the United States, about assessing the profits from that sale and about the compensation due co-defendant Paul Restorick for that sale.

t. The above facts are set forth for the limited purpose of complying with Rule 11(b)(3) and are not intended to serve as a complete statement of the defendant's criminal conduct.

III.   **SENTENCING GUIDELINES**

5.   The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

**BASE OFFENSE LEVEL**

6.   The government maintains that Guidelines § 2T3.1(c)(1) applies to Count Two, as the offense involves a contraband item covered by another offense guideline, and that Guidelines § 2M5.2(a)(1) (relating to Arms, Munitions, or Military Equipment or Services) therefore applies to the offense of conviction and provides for a base offense level of 26.

7.   The defendant maintains that Guidelines § 2T3.1(a)(3) applies to Count Two and provides for a base offense level of 4.

8.   The government maintains that, if the cross reference of Guidelines § 2T3.1(c)(1) does not apply to Count Two, an upward departure under Application Note 2 of Guidelines § 2T3.1 is warranted using an alternative measure of tax loss of 25 percent of the imported items' fair market value in the United States, which would make Guidelines §§ 2T3.1(a)(1) and 2T4.1(F) applicable to the

7

offense of conviction set forth in Count Two and provide for an offense level of 16.

### SPECIFIC OFFENSE CHARACTERISTICS
### USSG CHAPTER 2 ADJUSTMENTS

9.    The government maintains that, if Guidelines § 2T3.1(a) applies to Count Two, the following specific offense characteristic does apply to Count Two:

> The 2 level increase (or increase to base offense level 12) pursuant to Guidelines §2T3.1(b)(1) (offense involved sophisticated means).

The defendant specifically reserves the right at the time of sentencing to argue to the Court that this increase does not apply.

### USSG CHAPTER 3 ADJUSTMENTS

10.   The government and the defendant agree that the following adjustment to the base offense level for Count Two does not apply:

> Any increase or decrease under Guidelines § 3B1 relating to role in the offense.

### ADJUSTED OFFENSE LEVEL

11.   Based on the foregoing, the government maintains that the adjusted offense level for the offense of conviction is 26 if

Guidelines § 2M5.2 is applied, and is 18 if Guidelines § 2T3.1 is applied.

## ACCEPTANCE OF RESPONSIBILITY

12.  At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines §3E1.1(a) (acceptance of responsibility) and, if applicable, further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines §3E1.1(b), which would result in a total offense level for Count Two of 23 if Guidelines § 2M5.2 is applied; or 15 if Application Note 2 of Guidelines § 2T3.1 is applied; and of 2 if Guidelines § 2T3.1(a)(3) is applied without adjustment.

## CRIMINAL HISTORY CATEGORY

13.  It is the understanding of the government and the defendant that the defendant's criminal history category is I.  The defendant understands that, if he is sentenced for or convicted of any other charges prior to sentencing in this action, his criminal history category may increase.  The defendant understands that he has no right to withdraw the plea of guilty based on the Court's determination of his criminal history category.

9

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

14.   (a) It is the understanding of the government and the defendant that, with a total offense level of 23 and a criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **46** to **57** months, a fine of **$10,000** to **$100,000**, and a period of supervised release of **2** to **3** years.

(b) It is the understanding of the government and the defendant that, with a total offense level of 15 and a criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **18** to **24** months, a fine of **$4,000** to **$40,000**, and a period of supervised release of **2** to **3** years.

(c) It is the understanding of the government and the defendant that, with a total offense level of 2 and a criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **0** to **6** months, a fine of **$100** to **$5,000**, and a period of supervised release of **2** to **3** years.

(d) Notwithstanding the above, the defendant understands that, at sentencing, he is subject to the maximum penalties set forth in Paragraph 1 of this agreement.


15.   The government reserves the right to advocate for a Sentencing Guidelines determination which results in a sentencing range for imprisonment of **46** to **57** months.   The defendant reserves

the right to advocate for a Sentencing Guidelines determination which results in a sentencing range for imprisonment of 0 to 6 months.  Both parties reserve the right to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

16.   The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations recommended by either party and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV.    STATUTE OF LIMITATIONS

17.   In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any criminal prosecution which is not time-barred as of the date of this agreement.  This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

11

**V.   GOVERNMENT RIGHTS AND RESERVATIONS**

18.   The  defendant  understands  that  the  government  has
reserved the right to:

      a.   provide  to  the  Probation  Office  and  the
Court all the information and evidence in its
possession that the government deems relevant
concerning   the   defendant's   background,
character and  involvement  in  the  offenses
charged,  the  circumstances  surrounding  the
charges and the defendant's criminal history;

      b.   respond at sentencing to any statements
made by the defendant or on the defendant's
behalf  that   are   inconsistent   with   the
information  and  evidence  available  to  the
government;

      c.   advocate   for   a   specific   sentence
consistent with this agreement;

      d.   modify  its  position  with  respect  to  any
sentencing recommendation or sentencing factor
under   the   Guidelines   including   criminal
history category, in the event that subsequent
to  this  agreement  the  government  receives
previously unknown information regarding the
recommendation or factor; and

      e.   oppose  any  application  for  a  downward
departure   and/or   sentence   outside   the
Guidelines range made by the defendant.

19.   At sentencing, the government will move to dismiss Count
One of the Indictment as against this defendant.

20.   The  defendant  agrees  that  any  financial  records  and
information provided by the defendant to the Probation Office,

12

before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI.  **ALIEN STATUS**

21.  The defendant acknowledges that the defendant is not a citizen of the United States and that the defendant is on notice that the defendant's ability to enter, remain and/or reside in the United States is subject to the laws, regulations and associated policies of the Department of Homeland Security.  The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status will be determined by the Department of Homeland Security in a separate proceeding.  The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status.

## VII.  **APPEAL RIGHTS**

22.  The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal or collaterally attack any component of the

sentence imposed by the Court which is equal to or less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 14(b), above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves his right to argue the correctness of his sentence.

23. The defendant understands that, by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future he becomes aware of previously unknown facts or a change in the law which he believes would justify a decrease in his sentence.

24. The government waives its right to appeal any component of a sentence imposed by the Court which is equal to or greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 14(a), above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII.  COOPERATION

25.  The defendant will cooperate with the government by providing complete and truthful information regarding his knowledge of any and all criminal activity, whether undertaken by himself or others, in any way involving or related to the unlawful possession, manufacture, distribution, importation or smuggling of arms, munitions or military equipment, or involving or related to terrorism, genocide or war crimes activity.  The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such pre-trial, trial and post-trial proceedings as the government shall deem necessary.

26.  The defendant further agrees to provide proactive cooperation to the government regarding individuals involved in criminal activity involving the unlawful possession, manufacture, distribution, importation or smuggling of arms, munitions or military equipment or terrorism.  The defendant agrees to comply with all reasonable instructions of law enforcement agents in this regard.

27.  The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government

and who have agreed to abide by the terms of the "Cooperation" section of this agreement.  The defendant's obligation to testify truthfully and completely shall extend to proceedings in federal, state and local courts in jurisdictions which have agreed to abide by this agreement.  The parties understand that information provided by the defendant under the terms of this agreement shall not be shared with local, state, federal or foreign jurisdictions that have not agreed to abide by the terms of the "Cooperation" section of this agreement.

28.  In exchange for the defendant's plea of guilty and cooperation as set forth in this agreement, he will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to the unlawful possession, manufacture, distribution, importation or smuggling of arms, munitions or military equipment.

29.  Further, no testimony, statements or other information provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.

16

30. Upon condition that the defendant has fully complied with all the terms and conditions of this agreement, should the government determine that the defendant has provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines as provided for in Guidelines § 5K1.1. The defendant understands that the decision to make such a motion is within the sole discretion of the government and that the decision to grant such a motion, and the extent of any downward departure, are matters solely within the discretion of the Court.

31. This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false information to the government. This agreement is not contingent upon the filing of charges against, the return of an Indictment against, or the successful prosecution of, any person or entity.

32. It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes. It is also a condition of this agreement that the defendant must, at all times, give complete, truthful and accurate information and testimony and not withhold information from the

17

government or refuse to testify truthfully and completely.   Should the defendant be sentenced prior to the completion of his cooperation with the government, the defendant's obligation to comply with the cooperation provisions of this agreement shall extend past sentencing.

33.   In the event the government believes the defendant has violated any of the conditions of the "Cooperation" section of this agreement, the government, in addition to its other rights as set forth in the "Cooperation" section of this agreement, reserves the right:   (a) to modify any recommendation the government agreed to make in a motion pursuant to Guidelines § 5K1.1; and (b) to petition the Court, before or after sentencing, for an order declaring that the defendant has breached the "Cooperation" section and relieving the government of its obligations under this section.

34.   In the event the government petitions the Court to declare that the defendant has breached the "Cooperation" section of this agreement, whether the defendant has violated any of the conditions of the "Cooperation" section shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant shall be admissible and at which the government shall be required to establish any violation by a preponderance of the evidence.   In order to establish any

18

violation by the defendant, the government is entitled to rely on statements and information given by the defendant pursuant to this agreement.

35.   If the "Cooperation" section of this agreement is declared breached by the Court:

a.   the defendant shall thereafter be subject to prosecution for any federal criminal violations of which the government has knowledge, including, but not limited to, perjury and obstruction of justice;

b.   the government may withdraw any motion filed pursuant to Sentencing Guidelines § 5K1.1, Title 18, United States Code, Section 3553(e) and/or Rule 35(b);

c.   the defendant has no right to withdraw the plea of guilty;

d.   the defendant shall waive all rights under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410 and Sentencing Guidelines § 1B1.8 and the defendant expressly agrees that all statements, testimony and tangible objects provided by the defendant (with the exception of statements made in open court during guilty plea proceedings), whether prior or subsequent to this agreement, can be used directly and indirectly in any and all criminal proceedings against the defendant; and

e.   the defendant agrees that any charges that were dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government. Furthermore, the defendant agrees not to assert the statute of limitations as a defense to any criminal offense for which he received a promise of non-prosecution above which is not time barred as of the date of the signing of this agreement.   This waiver shall be effective for a period of six months following the date upon which the Court's order declaring the agreement breached by the defendant becomes final.

19

36.  At the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court.  The government and the defendant will request that sentencing be adjourned until full satisfaction by the defendant of the terms of this agreement.   In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines § 5K1.1.

37.  The defendant's attorney is expressly permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## IX.   <u>FORFEITURE PROVISIONS</u>

38.  As a condition of the plea, the defendant agrees not to contest any forfeiture or abandonment proceeding that may be brought by the United States and agrees to immediately criminally forfeit all of the defendant's right, title and interest to any and all property which is subject to forfeiture pursuant to 18 U.S.C. § 545 which is in the possession and control of defendant or the defendant's nominees.  That property includes:

20

a)   **MONETARY JUDGMENT**

> i)   The sum of three hundred forty-five thousand six
> hundred dollars ($345,600.00) in United States currency,
> which represents the value of the merchandise introduced
> into the United States as a result of defendant's offense
> in this case, to be evidenced by a judgment issued by
> this Court against the defendant.  Said judgment will be
> referenced in the <u>PRELIMINARY ORDER OF FORFEITURE</u> and
> will provide for interest to accrue at the prevailing
> rate per annum and serve as a lien against the
> defendant's property, wherever situated, until fully
> satisfied.

39.   After the acceptance of this plea of guilty, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the government will request a <u>Preliminary Order of Forfeiture</u> covering the currency listed in paragraph 38a, above.  The defendant hereby waives any right to notice of such <u>Preliminary Order of Forfeiture</u>. The defendant further consents and agrees that the <u>Preliminary Order of Forfeiture</u> shall become final as to the defendant prior to sentencing and agrees that the Order shall be made part of the defendant's sentence and included in the Judgment pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure.

40.   The defendant further agrees to the entry of orders of forfeiture for the aforementioned property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of

the forfeiture in the judgment.   Defendant acknowledges that he understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

41.   The defendant further agrees that forfeiture of the sum of three hundred forty-five thousand six hundred dollars ($345,600.00) in United States currency, to be evidenced by a judgment issued by this Court as set forth in this agreement, shall not be deemed an alteration of the defendant's sentence. Forfeiture of the sum of three hundred forty-five thousand six hundred dollars ($345,600.00) in United States currency, to be evidenced by a judgment issued by this Court, shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

## X.   TOTAL AGREEMENT AND AFFIRMATIONS

42.   This Plea Agreement represents the total agreement between the defendant, KARL KLEBER, and the government.   There are no promises made by anyone other than those contained in this agreement.   This agreement supersedes any other prior agreements,

written or oral, entered into between the government and the defendant.

WILLIAM J. HOCHUL, Jr.
United States Attorney
Western District of New York

BY: _~Frank H. Sherman~_____

FRANK H. SHERMAN
CHARLES E. MOYNIHAN
Assistant United States Attorneys

Dated: _February 9_____, 2011


I have read this agreement, which consists of 23 pages. I have had a full opportunity to discuss this agreement with my attorney, Eric H. Sussman, Esquire. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____          _____
Eric H. Sussman, Esq.                Karl Kleber
Attorney for the Defendant           Defendant

Dated: _Feb 9____, 2011              Dated: _Feb 9____, 2011

23